STATE ex rel. PUBLIC SERVICE COMMISSION et al., APPELLANTS, v. GREAT NORTHERN UTILITIES CO., RESPONDENT.

(No. 6,622.)

(Submitted January 6, 1930.  Decided January 24, 1930.)

[284 Pac. 772.]

443

*Mr. L. A. Foot,* Attorney General, *Mr. L. V. Ketter,* Assistant Attorney General, and *Mr. Francis A. Silver,* for Appellants, submitted a brief; *Mr. Silver* argued the cause orally.

*Messrs. Maddox & Church, Messrs. Gunn, Rasch, Hall & Gunn, Mr. Louis P. Donovan* and *Mr. E. G. Toomey,* for Respondent, submitted a brief; *Mr. M. S. Gunn* and *Mr. Toomey* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment of dismissal in mandamus proceedings. The record herein discloses that the Great Northern Utilities Company, hereafter referred to as the Utility, has been in the business of furnishing natural gas to the people of Shelby for some years and, up to 1927, charged, based upon the amount used, from sixty down to thirty cents per thousand feet. In 1927 the Public Service Commission, hereafter called the Commission, gave notice of a hearing on these rates, whereupon the Utility reduced its maximum rate to fifty cents per M.

In October, 1928, a rival concern commenced serving a part of the city at rates of from thirty-five cents to twenty-two and one-half cents, and thereupon the Utility reduced its rates to from twenty cents down to fifteen cents per M. The rival complained to the Commission and, after a hearing the Commission ordered the Utility to file its schedule fixing its rates the same as those of its rival; the order to be in effect from and after February 1, 1929. The Utility did not comply with

the order, but on February 8 commenced action in the district court of the first judicial district for the cancellation of the order as illegal. In its complaint filed the Utility asked for an injunction *pendente lite* but did not urge its issuance. The first judicial district has two judges; this action was pending on demurrer to a second amended complaint in department No. 2 presided over by Judge Horsky, when, on November 5, 1929, the Commission made application to Judge Poorman, in department No. 1, for a writ of mandate to compel the Utility to comply with the rate order pending final determination of the action. To this application the Utility interposed a motion to quash, which was sustained by an order which recites that this action was taken ''without reference to the validity of the order made by the relator and solely on the ground that, at the time this proceeding was commenced, there was, and still is, an action pending in a court of concurrent jurisdiction between the same parties, based substantially upon the same facts and in which the same issues here involved may be raised.'' Judgment of dismissal followed, and the Commission has appealed from the judgment, contending that the pending action is no bar to the mandamus proceeding. With this contention we agree.

We have twenty judicial districts in this state (sec. 8812, Rev. Codes 1921); some have one judge, some two, and some three (sec. 8813, Id.). When a district has more than one judge, departments are created and the business is divided by rules of court adopted by the judges or by this court (sec. 8832, Id.), but the court presided over by each of the judges is *the* district court of the district and not *a* departmental court. The jurisdiction of the court extends to all matters properly before it, and neither department is ''a court of concurrent jurisdiction'' to the other. In the absence of rules, either judge has full authority to proceed in any matter properly before the court. (*State ex rel. Little* v. *District Court,* 49 Mont. 158, 141 Pac. 151.)

It is true that when a matter is pending in one department, a judge of another department is not permitted to inter-

fere therewith (*Lutey Bros.* v. *Jackson,* 55 Mont. 556, 179 Pac. 459), but that situation is not presented here. The action pending in department 2 attacks the validity of the Commission's order, but, in terms, the statute prohibits the court in such an action from issuing an injunction *pendente lite* and declares that the "rates fixed by the Commission shall be deemed reasonable and just, and shall remain in full force and effect until final determination by the courts having jurisdiction" (secs. 3905 and 3906, Rev. Codes 1921), and sec. 3911, Id., specifically authorizes mandamus proceedings to compel obedience to the orders issued.

It is therefore clear that the statutes contemplate such a proceeding independent of, and without regard to, the action pending to test the validity of the order, and that the fact that such an action is pending did not justify the quashing of the writ. This conclusion, however, does not alone warrant a reversal of the judgment, if the trial court was acting within jurisdiction in passing on the motion to quash and the decision made is right on any theory which might have been adopted by the court in rendering it.

The rule that an appellate court is not concerned with the reason given for a decision, and will therefore affirm a correct ruling regardless of the fact that the trial court gave a wrong reason therefor, is of almost universal application and has been followed in this jurisdiction on the consideration of every conceivable species of decision which the trial court had authority to make, as shown by the reported cases from *McMullen* v. *Armstrong,* 1 Mont. 486, to *Whitcomb* v. *Beyerlein,* 84 Mont. 470, 276 Pac. 430; in other words, whenever it appeared from the record that the trial court acted judicially. In *McMullen* v. *Armstrong,* above, the territorial court said: "Admitting that the reasons assigned for, and by which the court was governed in making its ruling, are erroneous, yet it makes no difference if the ruling itself is proper and correct. It matters not by what process or method of reasoning, or by what form of argument or manner of deduction, whether true

or fallacious, a conclusion is arrived at, provided the conclusion itself is right.''

We can now avoid the determination of further questions presented by the motion to quash, only by declaring that the trial court, in effect, refused to assume jurisdiction of the motion and did not act judicially in determining it. A somewhat similar action was taken in the case constituting the basis of an application for a writ of mandate in *State ex rel. Peel* v. *District Court*, 59 Mont. 505, 197 Pac. 741, 743, wherein this court declared that in striking a petition for letters of administration which the petitioner was entitled, under the statute, to have heard, the court did not act within jurisdiction, and therefore mandamus would lie to compel reinstatement, quoting in support thereof from High on Extraordinary Legal Remedies, section 151: ''Refusal to take jurisdiction, or, after having acquired jurisdiction, refusal to proceed in its regular exercise, or the erroneous determination of a preliminary question of law, upon which the court refused to examine the merits, will be corrected by mandamus.''

But in the *Peel Case* the conclusion was reached only because it was declared that the trial court had no jurisdiction to strike a proper and authorized pleading from the files, and therefore acted without jurisdiction, permitting mandamus. In other words, this court held that the trial court had no jurisdiction to pass on the motion to strike, as it was not a proper motion, the statute (sec. 10077, Rev. Codes 1921) declaring that the court ''must hear'' the petition to which the motion to strike is addressed. The decision in the *Peel Case* is an exception to the general rule in mandamus proceedings. No matter how erroneously, or even arbitrarily, a court may act, if it had jurisdiction to make the order or enter the judgment of which complaint is made, its act is judicial and mandamus does not lie to compel it to recall the order or judgment and make a new and different one. (*McMullen* v. *Armstrong*, above.)

After careful consideration of the *Peel Case*, we have come to the conclusion that the reason for holding there that the

court did net act judicially cannot be applied to the instant case. The decision of a motion properly presented to a trial court is a judicial act (*State* v. *Wolever*, 127 Ind. 306, 26 N. E. 762), while the action taken in the *Peel Case* was held to be not a judicial act.

A few cases have been found in which appellate courts have refused to follow the rule or to consider grounds not passed upon by the trial court for technical reasons, but no case has been found wherein such a ruling as that under consideration has been declared outside the rule. The nearest approach to the case at bar which we have been able to discover is that of *Pacific Paving Co.* v. *Vizelich*, 141 Cal. 4, 74 Pac. 352, 355, in which a case was dismissed because the summons was not returned within three years. On appeal the respondent sought to have the judgment affirmed on the ground that the complaint did not state facts sufficient to constitute a cause of action; it was there held that "such an objection to a complaint is not, however, available on a motion to dismiss an action, and cannot be considered on this appeal as tending to sustain the ruling of the court below." But that decision is not in point here, as, in the case at bar, the ground stated in the motion to quash is that "the affidavit in support of the application does not state facts sufficient to authorize the issuance of a peremptory writ of mandamus." Strictly, the "motion" does not reach the defect alleged, which should be attacked by general demurrer, but in modern practice motions are often permitted to take the place of demurrers (14 Ency. Pl. & Pr. 91), and, in fact, the so-called motion is but a notice of motion; the motion is that made on presentation orally to the court, at which time it is clear the movants added to their ground of motion stated,—that on which the court ruled. The motion before us is, in effect, if not in fact, a demurrer to the application for the writ, and the ruling thereon must be treated as a ruling on a demurrer.

The above rule as a correct ruling on a demurrer, based on a wrong reason, has always been applied in this jurisdic-

tion. (*Porter* v. *Plymouth Gold Min. Co.*, 29 Mont. 347, 101 Am. St. Rep. 569, 74 Pac. 938.)

The action of the court here is the same, in legal principle, as that considered in *State* v. *Hughes*, 78 Mont. 87, 252 Pac. 320, and *Warren* v. *Chouteau County*, 82 Mont. 115, 265 Pac. 676. In the first of these cases the court refused to consider a "supplemental motion" for a new trial on the ground of recently discovered new evidence, for the reason that the motion was not properly before the court; declaring the court in error, this court invoked the "wrong reason, right conclusion" rule, considered the motion on its merits, and sustained the trial court notwithstanding its erroneous refusal to consider the merits of the motion. In the *Warren Case*, after a full hearing, the trial court dismissed an action to quiet title as against the record of a county road never legally laid, on the ground that it lacked jurisdiction by reason of the fact that statutory provision was made for the abandonment of county roads. This court proceeded to determine the matter on its merits, despite the fact that the trial court had refused to pass on the merits of the suit.

In *Western Acceptance Co.* v. *Simmons Co.*, 71 Colo. 127, 203 Pac. 1096, for the purpose of sustaining a judgment dissolving a receivership, the court held that the matter was to be considered as though the trial court had refused to entertain the petition for insufficiency, and went back to the petition to discover whether such action would have been an abuse of discretion.

In the ordinary action challenging an order requiring a utility to lower its rates on the ground that the order is unjust and unreasonable, the only question presented on application for mandamus to enforce the rates pending final determination would be as to the constitutionality of the statutes authorizing such enforcement. Here the order is not that the Utility should lower, but that it should raise, its rates, and the constitutionality of the statutes could only be raised on a showing of injury or prejudice. As the question of the constitutionality of the statute prohibiting in-

junction and authorizing mandamus to compel obedience to the order pending final determination was properly before Judge Horsky on application for the injunction *pendente lite* and could be presented at any time in the action pending, that "due sense of propriety" mentioned in *Lutey Bros.* v. *Jackson,* above, might be sufficient ground for refusal, on Judge Poorman's part, to consider this question; but we need not base a decision on this question of propriety. This question of the constitutionality of the statutes was not raised before Judge Horsky, as the Utility did not urge the issuance of an injunction *pendente lite,* and the Commission could only raise the question by an application for mandamus in Judge Horsky's department in the same manner as it was raised in Judge Poorman's department; any application there made would be a separate proceeding and not a part of the action pending, even if it could be brought in by cross-complaint or application, since such a pleading brings in a new cause of action and its determination constitutes a judgment, apart from the original proceeding, as in the case of application for temporary alimony in a divorce proceeding, or the condition of the pleadings considered in *Ringling* v. *Biering,* 83 Mont. 391, 272 Pac. 688. It cannot be assumed, therefore, that the trial court considered that ground for the quashing of the writ.

However, the question was squarely presented as to the validity of the Commission's order. Whether or not, under the laws of this state, the Commission has power to so order is the main question to be determined in the action pending before Judge Horsky.

The issuance of the writ of mandate lies within the sound legal discretion of the court to which application is made; in order to invoke favorable action, the relator must show a clear legal right to the writ. (38 C. J. 549–551; *State ex rel. Danaher* v. *Miller,* 52 Mont. 562, 160 Pac. 513.) If there is doubt of its necessity or propriety it will not go, and even when the applicant shows a clear legal right to the writ and that there is no other adequate remedy, the writ may prop-

erly be denied where by its issuance the public or third persons might be injuriously affected. (38 C. J. 550.)

Called upon to pass upon the sufficiency of the showing made, Judge Poorman found himself in the embarrassing situation of being asked to determine, in advance, the question presented to Judge Horsky in a proceeding regularly instituted to test the legality of the order. This question is at least debatable, and its presentation raises a grave doubt as to the propriety of issuing the writ of mandate under the peculiar circumstances of this particular case. This consideration, coupled with the fact that the rights of the public and of third parties at Shelby, the consumers of gas now paying but twenty cents per thousand feet, would be injuriously affected thereby, is sufficient to warrant the exercise of discretion in denying the writ.

For the reasons stated the judgment is affirmed.

MR. JUSTICE GALEN concurs.

MR. JUSTICE ANGSTMAN: I concur in the result reached in the foregoing opinion, but not with all that is stated in it.

In my opinion the ruling of Judge Poorman was justified for the reason that the relief sought by mandamus could have been obtained in the suit pending in department No. 2 of the district court, wherein the validity of the order in question was attacked by injunction.

The general rule is that, "where a proceeding in equity is pending between the same parties at the time of the application for mandamus, in which suit the relief sought by mandamus could be fully considered, it is proper for the court to decline to issue the writ." (38 C. J. 563.) "The court, having once taken rightful cognizance of a cause, is empowered and required to afford complete relief, even though it incidentally involves the granting of a remedy ordinarily administered by the court in a special proceeding." (21 C. J. 140.) This is but a statement, in another form, of the

452

principle followed by this court that when equity once acquires jurisdiction over the subject matter and the parties, it will retain jurisdiction for the purpose of administering complete relief and doing entire justice. (*Raistakka* v. *Fagerstrom*, 64 Mont. 173, 208 Pac. 949.)

The subject matter in the suit pending in department No. 2 is the identical order sought to be put into effect by the mandamus proceeding. Its validity is assailed in the action pending in department No. 2. I know of no reason why application for mandatory relief may not be made before Judge Horsky, who has assumed jurisdiction of the cause wherein the validity of the order is drawn in question. By analogy the case of *Durfee* v. *Harper*, 22 Mont. 354, 56 Pac. 582, supports this view.

This court in *Lutey Bros.* v. *Jackson*, 55 Mont. 556, 179 Pac. 459, 460, said: "When the district courts became clothed with authority to grant both legal and equitable relief in the same action, the necessity of seeking relief elsewhere, and thus arraying one court against another, no longer existed. Judge Lynch having acquired jurisdiction of the cause in the first instance, application for appropriate relief, either legal or equitable, should have been made to him."

In my opinion, Judge Poorman, under the circumstances, properly declined to issue the writ, since the relief asked could have been applied for in the action pending in department No. 2 of the district court.

MR. CHIEF JUSTICE CALLAWAY: I concur fully with what Mr. Justice Matthews has said respecting that functions of judges of the same court and as to courts which for convenience are divided into departments. As Judge Horsky is expected to decide the merits of the main cause very soon, I am not especially concerned over the result of this appeal except as it affects the statute shortly to be quoted. It seems to me unfortunate that the "wrong reason, right conclusion" doctrine is applied to this case, for to do so practically nullifies the statute, which reads as follows: "In addition to all the

other remedies provided by this Act for the prevention and punishment of any and all violations of the provisions thereof and all orders of the commission, the commission may compel compliance with the provisions of this Act and of the orders of the commission by proceedings in mandamus, injunction, or by other civil remedies." (Sec. 3911, Rev. Codes 1921.) All orders of the Commission are meant. The legislature said plainly that the Commission may compel compliance with its order by proceedings in mandamus. This is a special statute providing special means for the exercise of power by an arm of the government. The learned trial judge, assuming erroneously that the very matter before him was pending before his brother judge, invoked a rule of procedure and refused to proceed. The very matter was not and is not pending before Judge Hossky. He has the case before him on the merits. The Public Service Commission, in applying for a writ of mandate, attempted, as the statute commands, to put in force the rates fixed by it *pending* the determination of the case on the merits. That is all the trial court was asked to do. The Public Service Commission had no other remedy so far as I can see. Not by any course of procedure known to me, if section 3906 is valid (a subject into which we do not now inquire), can the Public Service Commission obtain the relief in the main action which it seeks in this proceeding. It certainly cannot obtain a writ of mandamus in the main action.

The exercise of jurisdiction is the exercise of power, and the refusal to exercise a particular power is to refuse to exercise jurisdiction in that particular. The trial judge refused to entertain jurisdiction of the case for the reason that in his opinion another action was then "pending in a court of concurrent jurisdiction between the same parties, based substantially upon the same facts and in which the same issues here involved may be raised." He was clearly in error, and it seems to me that the judgment should be reversed. The fact that the trial court acted judicially in its determination should not save the judgment. A court frequently has been compelled to proceed where it has refused "to take jurisdic-

tion where by law it ought so to do, or where, having obtained jurisdiction in a cause, it refuses to proceed in the due exercise thereof.'' (*Ex parte Parker*, 120 U. S. 737, 30 L. Ed. 818, 7 Sup. Ct. Rep. 767, quoted in *Raleigh* v. *District Court*, 24 Mont. 307, 81 Am. St. Rep. 431, 61 Pac. 991, 993.) In the *Raleigh Case* the district court erroneously struck from the files a contest of a will on the ground that it was inadmissible because of a former contest. It seems to me that upon principle the doctrine of the *Peel Case,* supra, is applicable also.

Mr. High says if a trial court has erroneously decided some question of law or of practice presented as a preliminary objection, and upon such erroneous construction has refused to go into the merits of the case, mandamus will lie to compel it to proceed. (High on Extraordinary Legal Remedies, 3d ed., sec. 151.)

Here it is clear, if anything in the case is clear, that the trial court, owing to an erroneous determination of a preliminary question—a matter of procedure—refused to entertain the application for the writ upon the merits. If its action can be sustained, it is difficult to conceive of a case in which an order of the Commission can be maintained by mandamus. If the trial court is of opinion that the case presents a serious question, or that somebody may be injuriously affected, it may dismiss the proceeding—refuse to act—and then this court will give the case the final blow by refusing to interfere. Thus, with teeth drawn, the statute is practically useless.

MR. JUSTICE FORD: I concur with what is said by Mr. CHIEF JUSTICE CALLAWAY above.

Rehearing denied February 25, 1930, MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE FORD dissenting.